Good morning, your honors, and may it please the court. A district court sitting in diversity must apply existing Arkansas law, not create new law. Here, I'm sorry, not what law? Not what law? Not create new law. District court must apply existing Arkansas law, not create new law. Here, the district court recognized that Arkansas has a terminable-at-will doctrine that allows for leases that have an indefinite term to be terminated at will by either party. That doctrine was recognized by the court multiple times and agreed, its existence agreed to by all parties. I think, but I think your definition of indefinite is different from the one that the district court applied. The district court's definition of indefinite was that it was not certain to ever end. This lease is not certain to ever end. It's entirely within Unimin's control and it's subject to Unimin's whim. The specific term of mining operations, which is partially defined in the lease, but as admitted by Unimin, impossible to fully define. The part that is defined of mining operations includes operations that may last forever, have admittedly occurred and might last forever, that are impossible for the parties to ascertain whether they have been accomplished and continue. Could the original agreement, or the modified one, I guess, in 61, could it have said, instead of for a term of years and then thereafter, could it have essentially said forever? Could it have conveyed the mineral rights forever? In Arkansas, for a lease to be perpetual, it must contain specific words to that effect that it does last forever, for example. So it is possible in Arkansas to create a perpetual lease, but this lease does not contain any words suggesting that the parties agreed and knew and meant to create a perpetual lease. So this lease, in effect, is perpetual in that it includes mining operations to continue the lease that admittedly last forever, yet the parties did not agree to a perpetual lease. So yes, Your Honor, it is possible to do that, but that was not done here. The District Court recognized that Arkansas has that terminable at will doctrine and found the lease indefinite, but did not apply the doctrine to the 1961 lease. Under Arkansas law, even if you do look to the restatement, even if it's appropriate to look to the restatement, the court never then applied Arkansas law to the language of the 1961 lease. So well, it seems what the court was doing, it seems like we may be dealing with confusion of the terminology, but as I understand the court in using the term indefinite was as a term of art and not as a term of common parlance where we just talk about something we don't know, that when you speak of a indefinite term, it doesn't necessarily mean the same thing that in its legal meaning doesn't mean necessarily what you and I might mean when we don't know when the train's going to come. Regardless of Judge Holmes' intent when he said that the lease was indefinite, regardless of what he was intending to convey, at the end of the day, that Arkansas law, that well-established Arkansas law that's been recognized by this court and the Arkansas Supreme Court, at the end of the day has to be applied to the language of the lease, and that was never done. The district court never said, okay, is this event that causes termination, is the lease term, is that event indefinite or not? What you're saying is that you think it's not ascertainable. Is that your point, that the end of this lease is not ascertainable because the words are so indefinite, so difficult to construe that you would never really know when it ended? Correct, Your Honor. That's one reason why this lease is indefinite. It's indefinite because it's incapable of ascertainment, particularly the term mining operations, which is partially defined. Aren't there Arkansas cases that have similar clauses in them, leases, and haven't those kinds of clauses been subject to trial and construction and interpretation and judgment? No, Your Honor. This lease is truly unique. Any of the leases that were the subject of the cases cited by Uniman were leases in the mining industry, were specific to mining or excavating gravel. But those leases, first of all, those cases did not apply the terminable at will doctrine to the language of those leases. That was not at issue in those cases. But second of all, this lease is not a simple mineral lease. This lease leased the land to Uniman's predecessor, and now Uniman, for other things other than mining. This lease continues regardless of whether mining is conducted. As long as mining operations continue. As long as mining operations continue. And the lease also contemplates that there's land outside of the leased property that Uniman has control of, that it can utilize the leased property to haul and transport materials from other properties across the leased property into its mill on this property. So that's not mining. That is more in the milling aspect. But to answer Judge Arnold's question, those other cases involve leases specific to mining as long as mining continues. This lease continues regardless of whether mining is continuing to occur on the land. Let me ask you this. In the Habendum Clause, there's one phrase that's used to define when the leasehold would determine. But then later on in the lease, I think maybe Section 6, there's a right of entry on condition. And the words there to describe when that occurs are different from the words used in the Habendum Clause. Are they meant to be read together? Or are these different conditions? Sections 4 and 5, Your Honor, discuss defaults under the lease. And that is different than the term. The term on page 4 says, this is the term. And then in Sections 4 and 5, it discusses events of default. And those events of default, we must remember that this lease began in 1961. Now what I'm asking is different. Are these different? The words are different. Are they meant to be read together to determine when either the right of entry can be exercised or the lease determines by its own terms? Or are they different events? They are different events. Okay. And the reason is that we can tell that from the plain language of the lease is that the term in the Habendum Clause says that the lease lasts until 2007 and as long thereafter. Whereas Section 5, the events of default, could have occurred in 1962, in 2006. This lease continued for 46 years where events of default could occur during that time period. Okay. But I'm talking about the condition itself, not when it could be exercised. But are these two different conditions? Let's put it that way. They are two different conditions. And not just because of timing? Well, timing proves the point, but also it's demonstrated by the fact that there's different language in Section 5 than in the Habendum Clause. Thank you. And Uniman's new interpretation of this lease, which differs from their interpretation at the motion-dismiss stage and differs from their interpretation at the summary judgment phase, their new interpretation, which disagrees with the district court, that interpretation says they now say this lease lasts as long as a mine and mill continue. Well, if the parties intended that, they could have said so. And Section 5 shows that the parties knew how to say, as long as a mill continues, they said it. But they didn't say that in the Habendum Clause. They used specific language that's unique to this lease that goes beyond mining operations, which itself is indefinite, and created a unique lease that fits the Terminable at Will Doctrine that must be applied in this case. Well, why did the district court disagree with your assertion that this term was indefinite? I think the district court found that the term is indefinite. With your contention, with respect to what they did, the district court did not find that it was indefinite in the sense that it would give rise to a tenancy at will. Correct. How come? Because the district court must have thought this condition was ascertainable, the event, even though the event might never occur and, therefore, the lease is indefinite in the sense that we don't know exactly how long it will last, I think the district court must have thought it was definite in the sense that there's an ascertainable event that will cause the lease to terminate. There's no indication in the summary judgment order that the district court found that. In the motion to dismiss order, the district court said the opposite of that, but that no one knows when it will end. Well, it's like if you convey a life estate, you don't know when it's going to end, but you can know when it will. Correct. And here you don't know when. A person may live 50 years, they may live a week, but when they die, it's over. Correct. And here we don't know when it will end. For example, mining operations include stockpiling dirt on the ground. That can last forever. It admittedly can last forever, by Uniman's 30B6 witness. This lease is totally subject to their whim. We know from Coley whether it seems like it may have been an imprudent lease to make a lease give what amounts to life estate to an immortal. But it is subject to existing Arkansas law, and the only reason that Judge Holmes found that that doctrine does not apply is because he cited to the restatement. But the restatement assumes that there is an event that is ascertainable. The restatement assumes that when it's talking about whether a lease has an event in it, it's not saying that no matter if that event is ascertainable or not. You need to also apply the Arkansas Terminable at Will Doctrine. And I'll reserve the remainder of my time for a rebuttal. Counsel, one last question, and this won't detract from your time. As I recall, this case, the district court tried to get the Arkansas Supreme Court to give some direction on what Arkansas law would be on this. Did the court give any clue as to why it declined to answer this legal question of Arkansas law? The majority of the Arkansas Supreme Court did not give a reason why they declined the certified question. There were two dissents, and one dissent indicated that since 2012, there hasn't been a question that was not certified or not taken. But the certified question was whether, okay, in the non-mineral lease context, we have the Terminable at Will Doctrine. And the certified question was, does that doctrine apply in the mineral lease context? That question, which wasn't taken up by the Supreme Court, wasn't even answered by Judge Holmes in his opinion now. He created an exception to the rule based on the landlord-tenant part of the restatement. So he didn't, and in doing so, he created an exception that swallows the rule. So now, no matter what a lease term says in a thereafter clause, according to this opinion and the restatement, it would be okay. And we know that's not true from Arkansas law explaining that certain lease terms can be indefinite. Thank you, Mr. Eskew. Mr. Moore? Mr. Chief Judge, and may it please the Court, good morning. My name is Barrett Moore. I, along with my partner, Robert Stroud, have the privilege of representing Uniman Corporation in this matter. Seated behind council table is Mr. Gordon Bull, the plant manager of the Guyon Mine and Mill. I want to answer the Chief Judge's question first, if I may. The answer to the question about why the Arkansas Supreme Court did not take the certified question is unfortunately, I believe, it's hard to tell. It's hard to look behind their decision. But I don't think they've taken but one other certified question from the Eastern or Western District of Arkansas since that time. And I think what's happened is there's been a shift in their certified question doctrine at the Arkansas Supreme Court. There was a divided decision that predated ours by about a month. I'm sorry, I can't hear you, counsel. There was what? You can raise that podium. There's a button there to your right. Okay. Sorry, I don't hear it all that well, so if you could speak up, please. Certainly. Thank you. There was a divided decision. Columbia Insurance Group, Incorporated v. CINMARC, 2016 Art 185, on a certified question where the actual majority said that this certified question was moot. And they didn't answer the question. They went into the facts of the case. The dissent said that's not really what we're supposed to do in a certified question. So I think there's been some doctrinal shift at the Arkansas Supreme Court. Unfortunately, as a practitioner of Arkansas law, I like for them to answer questions, but I don't know that they are anymore. I hope that answers your question. We're here today to argue for the validity of the lease and to argue for the affirmance of what Judge Holmes did. We think the lease is unambiguous. I think the appellants admitted the lease was unambiguous. We do have evidence in the record from a deposition taken in 1971 that the parties were represented by counsel at the time in March 1 of 1961 when they signed the lease. It was negotiated at arm's length, and this was a departure from the prior two leases. The parties negotiated, and the Williamson's, their grandparents, the plaintiffs, the appellants' grandparents negotiated a more favorable term. Is it readily ascertainable when the event that causes this lease to determine has occurred? Certainly. There's a number of things that can happen that would make it ascertainable. First, they'll stop being paid. As we read the language of the Habendum Clause, I read it as having two requirements. And it's because of the commas and the ands slash ors that make me say this. But one of three things must happen. Mining operations, mining must occur, or mining operations on the leasehold, or siliceous materials must be transported across, over, or under the leasehold. So that's one requirement. And this is the second part. Siliceous materials must be shipped from the lessee's mill or mills. And so if the mill shuts down, that and condition ceases. If the other three conditions cease, if there's no mining, mining operations, or shipping, or transporting siliceous materials across the leasehold, that would also cease the lease's extended term. And so one way they'll know is the mine will shut down. The mill will shut down. They'll stop receiving royalty payments, presumably. So we do believe it's an ascertainable event. I think it falls squarely within the precedent. I know the court asked that question. I can walk through the cases. I'm happy to do that. You have them in your brief. Yes. But we think this is analogous to part of this clause that might cause some difficulty with respect to determining an event. I'm sorry, Judge? There are no other sets, no other event, or no other condition or other sets of conditions that are more ambiguous than those you've just alluded to? I don't believe so. The court asked the question about the cure provision and the right to reenter. I assume you're talking about paragraph six, Your Honor. I believe that those have to be read together, but I think they're different events. I think that the — I assume you're talking about paragraph 5B, the cessation of the mill for 12 months. I assume that's what you're asking about, Your Honor. Maybe not. But it was. But there was — what you've got here is you've got two different estates. You've got a determinable leasehold, and you've got a leasehold on conditions subsequent. This lessee has actually got two interests in this land. The second one is the one that I was talking about, the condition — the first interest ceases automatically upon the happening of the event, whether anybody does anything or not. It's over. The second interest does not cease unless the lessor asserts a right of entry into the land and seeks to have the condition enforced, okay? My question was, are those events — well, the one that determines the leasehold and the one that triggers the right of reentry the same? That's my question. I believe the answer is they are different events. Okay. But the words are certainly different. Yes. And I think that if the mill were to shut down under Paragraph 5B, although there's a 12-consecutive-month period that would save the lease during the cure period, now that we're in the extended term, if the mill ceases shipping siliceous materials, that triggers the habendum clause. Have there been any extended shutdown periods through the course of the lease? There's no evidence of that in the record, and I don't believe so, Your Honor. We think the lease is ascertainable. We agree with the district court. We do believe that Arkansas law is controlling. We agree with the appellants on that. We think there's plenty of cases that support having a lease that continues where my shorthand is as long as a mine and a mill are operating on the leasehold. The mill, by the way, Your Honor — I know it's in the record, we mentioned it — is located on the particular leasehold, so all of the material is being shipped through the land that's at issue in this case. If it ceases operation, presumably, they're going to know. It's going to be obvious if they shut down the mine or the mill. I'm happy to answer any other questions the court has, but we believe the term is definite and ascertainable. I believe Coley v. Westbrook is not the case we have here, and that seems to be the one Arkansas case that they cite and they cited below. It's entirely distinguishable. Coley was a jury case, a jury trial over an unlawful detainer. The issue on appeal was whether the jury had been properly instructed about the unlawful detainer case, and it's just not what we have here. I do have one question. In light of the Bodka oil case, why do you think the district court thought there wasn't really any applicable Arkansas law on the subject? I agree with your Honor's question, and I don't know why the district court thought there wasn't controlling law. I think that there is controlling law, and I think that we have other district court decisions from the Eastern District of Arkansas. Perhaps we didn't do an effective job of briefing at the motion to dismiss stage, and once we started down that road, it was hard to come back. I wondered if there was any hint in the record of why there seemed to be some doubt on the part of the district court. It looks like a kind of plain vanilla property case to me. Yes, we agree, and we were happy to— You're right or wrong. I mean, I'm not— I understand. Okay. Thank you. We were happy to rebrief it and file a motion to reconsider and then incorporate that in our motion for summary judgment. We surveyed the law of other states, and we found 20 other states, three of which have adopted the restatement provision on point and buttressed our argument, and I think that it's been conceded on appeal because they did not make any argument about it in their opening brief that the law of other states supports this and supports the conclusion that the district court reached. There was a bit of an attempt to distinguish the restatement, but it's not an attempt they made below at the hearing. I think the district court even handed counsel his copy of the restatement and said, tell me why this doesn't apply. They did not have a response other than Arkansas law controls, not the restatement. I notice the Arkansas Supreme Court frequently refers to legal treatises rather than the restatement in these contexts, but I don't know that the Supreme Court of Arkansas has ever exhibited any particular hostility to the restatement, so I'm not sure that it doesn't seem to me it's obviously wrong to think that they would have some attraction to that. Well, and certainly the restatement third is a bit more liberal and not always adopted, but this is the restatement second. It's from the 1970s, and the restatement second of property has been adopted, not this particular provision. Yes, I know they referred to it. So another point that we made at the district court level, and I want to make sure I make it clear today, is that this typical habendum clause, or something similar to it, is the standard form lease for all integrated oil and gas leases in the state of Arkansas. The record is JA1095. We included it in our briefing. If somebody doesn't sign a lease with an oil and gas company, Arkansas law, if they're in the Eames High Section, requires them to have a lease. They have a lease just sort of if you die and don't have a will, you have a will, you just don't know what it says. It's the state statute that gives you an intestacy. Similarly here, Arkansas law integrates units and imposes a lease upon people who won't sign a lease. And the language of that standard lease is very similar. It says, long thereafter as oil and gas, or either of them, is produced from the above described land, or drilling operations are continuously prosecuted. So, very similar to what we have here, in line with the other cases I know the court is familiar with. But if the decision came out in the other direction, it would affect a significant number of leases, including the one at issue in this case. I'm happy to address any other questions. There's an extrinsic evidence issue in the case, in the briefing. We think that the lease is unambiguous, so there's no need to go towards and resort to If you do, the evidence they cite is our own corporate representative's testimony, which does not state that the lease is terminable at will. So, we believe that the court should be affirmed, and if you have any other questions, I'd be happy to answer them. I see none. Thank you. Thank you, Mr. Moore. Mr. Askew, your rebuttal, I believe you have about three minutes. May it please the court. Uniman's counsel just proffered a new interpretation of the lease, and I'd like to address that. They're now saying, contrary to what they said to the district court, and contrary to what the district court held as its interpretation, and contrary to their summary judgment briefing, that the lease continues so long as mining occurs, or operations occur, or transporting materials occurs, and that materials are shipped. So, either one of the first three, and shipping materials, so that it can be ascertained that the lease will end, because if the materials aren't shipped, that can be known. But, that's not a proper interpretation. Next one. If shipping is required at all times, which is what Uniman's counsel now says that the lease says, if that's required at all times, then why have section 5B that Judge Arnold pointed out? It would be superfluous. You have to read all provisions of the contract to make sense together, if at all possible. It also is contrary to their 30B6 deposition testimony as to his interpretation of the lease, and also hauling materials across, they testified, was a mining operation unto itself. So, there would be no reason to repeat that in the Habendum Clause, if the lease was interpreted to make that a requirement. So, that new interpretation is wrong. It can't be, it doesn't fit with Arkansas contract interpretation. Second, with respect to the Coley case, I just want to be clear that that is not the only case we are relying on. This court, three times, has recognized the Terminable at Will Doctrine in Mann Brothers, in Braswell, in Union National. The Arkansas Supreme Court has recognized the doctrine in Deloney, in Griffin, in Magic Touch. So, there are many cases recognizing this doctrine. And the point is, the key point is, is that regardless of whether the restatement is looked to, the restatement doesn't answer the key question in the case. Judge Holmes himself, at oral argument at summary judgment, stated that, well, the key question is whether this lease term is indefinite. And the counsel agreed. That is the question. Is the event indefinite? If so, the lease is Terminable at Will. If not, the lease is not Terminable at Will. But you have to apply Arkansas law to the exact language of the lease. And, at the very least, if Uniman's new interpretation is agreed to as the proper interpretation, I think, at the very least, this lease is ambiguous. The interpretation of the lease, that mining operations alone continue it, that was agreed to by both parties and the district court, at the very least, that interpretation is a reasonable interpretation. So, now we have competing interpretations and extrinsic evidence should be looked to for the proper interpretation of the lease, which must be done in order to apply Arkansas law and the Terminable at Will doctrine to the language. Thank you, Mr. Eskew. Thank you. Well, we should thank both counsel for your presence and the argument which you provided the court this morning. We'll take your case under advisement, render decision in due course. Thank you.